OPINION OF THE COURT
Thomas F. McGowan, J.
The County of Niagara (County) brings this proceeding pursuant to CPLR article 78 to annul the determination of the Public Employment Relations Board (PERB) and to stay the enforcement of PERB’s order. PERB counterclaims to confirm and enforce its order.
In September of 1981, Niagara County White Collar Employees Unit, Local 832, Civil Service Employees Association, Inc. (CSEA) and the County entered into negotiations for a contract to cover the calendar year 1982. An impasse was declared, a mediator appointed and fact finding was entered into. The fact finder issued a report dated May 20, 1982 which was rejected by both sides. Public hearings were then conducted by the Niagara County *750 Legislature. Following such hearings, the legislature, on August 3, 1982, issued a legislative determination covering the period from January 1,1982 to December 31,1982, which modified certain of the terms of the prior collective bargaining agreement which had expired on December 31, 1981. Thereafter, CSEA brought an improper practice charge based on newly enacted paragraph (e) of subdivision 1 of section 209-a of the Civil Service Law. The PERB hearing officer found no statutory violation and no improper practice. On CSEA’s appeal, PERB, in a two-to-one decision, reversed the determination of the hearing officer and ordered, inter alia, that the legislative determination of August 3, 1982 be rescinded to the extent that it modified the terms of the expired agreement and that the employees be made whole for any loss or diminution of benefits caused by such legislative determination.
PERB held that section 209-a (subd 1, par [e]) of the Civil Service Law precludes the legislative body of the public employer from imposing a settlement, pursuant to section 209 (subd 3, par [e], cl [iv]), which changes the terms of an expired collectively negotiated agreement. This reading of the statute is erroneous and arbitrary, and the determination and order of the board should be annulled.
Before the enactment of section 209-a (subd 1, par [e])* * (L 1982, chs 868, 921), the public employer, during the pendency of negotiations, was precluded by PERB’s Triborough doctrine (Matter of Triborough Bridge & Tunnel Auth. [District Council 37], 5 PERB par 3037, p 3064) from modifying any of the terms and conditions of employment (i.e., mandatory subjects of negotiations) contained in a prior expired agreement. There is some indication in the legislative history of section 209-a (subd l,.par [e]) that its purpose was to codify the Triborough doctrine and to extend it, as well, to nonmandatory terms contained in the prior expired agreement (see NY Legis Ann, 1982, pp 278, 279; memorandum in support of Governor’s program, Bill *751 S.7/A.7 of 1982 Extraordinary Session of the Legislature; letter to Governor from Majority Leader Daniel B. Walsh). As construed by PERB, however, paragraph (e) of subdivision 1 goes far beyond the parameters of the Triborough doctrine.
In 1972, the board stated in Triborough (5 PERB, at p 3065): “Paragraph (e) of subdivision 3 of Section 209 prescribes procedures for determining terms and conditions of employment in the event that negotiations, including conciliation procedures, do not produce an agreement. In the instant case, respondent acted unilaterally during negotiations and not after their completion when it could have gone [sic] so in accordance with the statutory scheme.” (Emphasis added.) Yet section 209-a (subd 1, par [e]) of the Civil Service Law, as interpreted by PERB, applies not simply to employer actions taken during negotiations. It applies, as well, to employer actions — including legislative action pursuant to section 209 (subd 3, par [e]) — taken after an impasse has been reached and negotiations have effectively concluded, as long as a new “agreement” as defined in subdivision 12 of section 201 has not yet been reached.
Except in certain instances set forth in paragraph (f) of subdivision 3 and subdivision 4 of section 209 of the Civil Service Law, an impasse in collective negotiations is to be finally resolved through the legislative process. After the recommendations of a fact-finding board have been re-^ jected by either the public employer or the employee organization, the chief executive officer of the employer shall (Civil Service Law, § 209, subd 3, par [e], cl [i]) and the employee organization may (Civil Service Law, § 209, subd 3, par [e], cl [ii]) submit recommendations for settling the dispute to the legislative body of the public employer. Following this, “the legislative body or a duly authorized committee thereof shall forthwith conduct a public hearing at which the parties shall be required to explain their positions with respect to the report of the fact-finding board” (Civil Service Law, § 209, subd 3, par [e], cl [iii]). During this process, the employee organization has ample opportunity to present its views, recommendations and requests to the legislative body. For its part, the legislature has a duty to consider all views presented to it, *752 including those of the public employees, before “[taking] such action as it deems to be in the public interest” (Civil Service Law, § 209, subd 3, par [e], cl [iv]). As stated by PERB in another context: “In some measure, the function of the local legislature is similar to that of an arbitrator. There being an unresolved dispute between an employee organization and the executive branch of a government, the legislative body is to resolve the dispute by taking action that considers the interests of both parties. This responsibility was given to the local legislature both because (unlike an ad hoc arbitrator) it has a continuing public responsibility and because it is a representative agency responsible to all interest groups, including public employees.” (Matter of City of Mount Vernon [Local 456], 5 PERB, par 3057, pp 3100, 3101).
However, these purposes and procedures are entirely defeated if the employee organization, after having participated in the legislative resolution process, may be heard to claim, pursuant to section 209-a (subd 1, par [e]), that the legislature acted improperly by modifying or abrogating certain employee benefits even where, at the same time, it may have increased or expanded other benefits. For example, it appears from petitioner’s brief in the instant case that the legislative resolution being challenged granted CSEA a 4% raise in salary. Thus, as construed by PERB, section 209-a (subd 1, par [e]) becomes a vehicle by which the employee organization may veto any part of the legislative enactment which compares unfavorably with the prior expired agreement. This could not have been the intent behind the statute.
What, then, is the purpose of section 209-a (subd 1, par [e])? The paragraph (e) of subdivision 1 phrase “until a new agreement is negotiated” is not, as PERB contends, a limitation on the legislative power to resolve an impasse. Rather, the phrase implies that an improper practice may arise only when negotiations are still in progress. It would be illogical to apply this language to legislative action taken after negotiations have broken off and a new negotiated agreement is no longer possible, especially in the absence of an amendment to the dispute resolution procedures of section 209 (subd 3, par [e]). Succinctly stated, *753 prior to the passage of chapters 868 and 921 of the Laws of 1982, the employee organization had an expectation under Triborough (supra) that the terms and conditions of employment contained in the expired agreement would be maintained while negotiations continued. This legislation simply insures that all terms of the prior agreement will remain in effect, but only until a new agreement is negotiated or until, after impasse, the legislative body “take[s] such action as it deems to be in the public interest” (Civil Service Law, § 209, subd 3, par [e], cl [iv]).
However, assume for the sake of argument that PERB is correct in reading section 209-a (subd 1, par [e]) as a limitation on the scope of legislative action pursuant to section 209 (subd 3, par [e]). The use of the verb “to refuse” in paragraph (e) of subdivision 1 points to a requirement of a showing that the employee organization asked, demanded or expected that “all the terms of an expired agreement” be continued. An improper practice should therefore be found only if the employee organization expressly requests, presumably at the legislative hearing, that all the terms of the expired agreement be maintained and the public employer refuses. Thus, legislative action would be limited, but only to the extent that the employee organization opts out of the legislative process, declines to submit its “case” to the legislative “arbitrator” and demands that the expired agreement be continued for the following year.
In conclusion, PERB acted unlawfully and arbitrarily here by finding the County guilty of an improper practice solely because the legislative enactment which resolved the dispute modified certain of the terms of the prior expired agreement. The County’s petition is granted. PERB’s counterclaim is denied.

 Subdivision 1 of section 209-a of the Civil Service Law reads in pertinent part as follows: “It shall be an improper practice for a public employer or its agents deliberately * * * (e) to refuse to continue all the terms of an expired agreement until a new agreement is negotiated, unless the employee organization which is a party to such agreement has, during such negotiations or prior to such resolution of such negotiations, engaged in conduct violative of subdivision one of section two hundred ten of this article.”